### NORTON v. WHITESIDE et al.

(Circuit Court, D. Minnesota. February 24, 1911.)

1. STATES (§ 12*)—BOUNDARIES—RIVERS—CHANGE OF CHANNEL.
    Where the channel of a navigable river constitutes the boundary between two states, such boundary shifts with the shifting of the channel, whether by natural or artificial causes.
    [Ed. Note.—For other cases, see States, Cent. Dig. §§ 6–11; Dec. Dig. § 12.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. NAVIGABLE WATERS (§ 42\*)—ISLANDS—RIGHT TO USE.**

The right or title to use or occupy an island in a navigable stream arises from the right or title to use or occupy the submerged land on which it is formed; the character and extent of the title remaining the same.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 253–255; Dec. Dig. § 42.\*]

**3. NAVIGABLE WATERS (§ 42\*)—SUBMERGED LAND—ISLANDS—TITLE.**

While the right either to submerged land or to an island formed thereon in a navigable river is a property right, and may be severed from the shore land by the owner thereof, it is a right arising out of and existing by virtue of riparian proprietorship, and its nature continues the same whether severed from the riparian proprietorship or not.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 253–255; Dec. Dig. § 42.\*]

**4. NAVIGABLE WATERS (§ 37\*)—RIVERS—SOIL UNDER WATER—RIGHT OF RIPARIAN PROPRIETOR.**

A grantee from the government of lands bounded by a navigable stream takes an absolute title in fee to the water's edge, and the state acquires a right or title to the soil or land under the water between the edge of the stream and the middle thread of the main navigable channel, in trust to preserve and improve the public right of navigation. Such right or title of the state, though paramount, is not proprietary, the riparian owner having a proprietary, though limited, title or ownership of such soil or bed to the thread of the navigable channel subject to the public navigation right.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.\*]

**5. NAVIGABLE WATERS (§ 42\*)—ISLANDS—OWNERSHIP—CHANGE OF CHANNEL.**

Where the government, in the exercise of its right to improve the navigation of a river, changed the channel to the opposite side of an island formed on and rising from the bed of the stream, such change transferred title to the island to the opposite riparian proprietor.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 253–255; Dec. Dig. § 42.\*]

**6. QUIETING TITLE (§ 49\*)—RELIEF—RIGHTS OF THIRD PERSON.**

In a suit between riparian proprietors to quiet title to an island in a navigable stream the court was without jurisdiction in equity to determine the rights of a third person in actual possession of the island, which rights could only be determined by an action at law.

[Ed. Note.—For other cases, see Quieting Title, Dec. Dig. § 49.\*]

In Equity. Suit by George W. Norton, as executor and trustee of the estate of George W. Norton, deceased, against Robert W. Whiteside and others. Decree for complainant as against defendants Whiteside and E. P. Alexander, and dismissed as to defendant Andrew J. Tallas.

Complainant alleged: "That defendant Andrew J. Tallas, some time since, without authority of law and without any right whatsoever so to do, entered upon the said low marshy island, and has pretended to occupy the same in some manner, and has placed thereon a small shack or cabin under the belief, as this plaintiff has been informed and believes, that such island was government land, and with the intent and expectation, as plaintiff is informed and believes, that by so doing he could obtain some rights to the same, or to enter and secure the same from the government of the United States or from the state of Minnesota or the state of Wisconsin, but your orator avers that the said defendant Tallas has not now nor has he ever had any right, title, or interest or valid claim whatsoever in the said island or

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

any part thereof, or in or to any part of the bed of such waters. That in the making of such improvements the government of the United States has deposited material from its dredging work near to the said so-called island, and has filled up the shallow waters therewith, and that by reason thereof and of the action of the waters in connection therewith, and by reason of the said improvement, that part of the original deep water channel through the said waters in front of plaintiff's lands has become filled up and is no longer navigable, and by reason thereof there is now more land appearing above the water in the locality of the said low marshy island than appeared formerly, and that part of said island is larger than it formerly was, and the said defendant Tallas has so placed his said cabin that by reason thereof, and of the matters and things hereinbefore set forth, he now intervenes between the said improved navigable and navigated channel of the said waters and the shore of the plaintiff's said lands, and between the said established harbor or dock line on the Minnesota side in front of plaintiff's lands and the shore of said lands, and therefore is infringing upon the riparian rights and privileges of your orator, which are incidental and appurtenant to his said lands and estate, and which, therefore, if persisted in, may operate to destroy valuable property rights of the plaintiff."

J. L. Washburn, for complainant.
L. C. Harris and Jacques & Hudson, for defendant Whiteside.
Daniel Cash and J. B. Richards, for defendant Tallas.

MORRIS, District Judge (orally, after stating the facts as above). After the careful, able, and exhaustive arguments of counsel in this case, and the complete threshing out and sifting of the questions here involved in nearly eight days of discussion by counsel, and between court and counsel, and of the cases bearing thereon, it seems to me that I am now able to form as correct a judgment on those questions, and to decide them correctly, as I can ever be. I do not think, therefore, that it will be necessary for me to take this case under advisement, but that I had better decide it now, and put you gentlemen at once upon the road to the Court of Appeals, to which court I apprehend it must go, no matter what may be my decision. I shall not attempt to review in detail the cases which have been so ably discussed by counsel, but shall only state the conclusions to which I have come as a result of the discussion.

Mr. Washburn in his argument has expressed a desire that I make a finding on the question of fact as to whether or not the waters here involved, lying between the shore line of the plaintiff on the one side and of the defendants Whiteside and Alexander on the other, are waters of a bay or arm of Lake Superior, that is, waters of Lake Superior, or waters of the St. Louis river. I do not think it necessary to do this, because in my view the result must be the same in either case. But I will say that it seems to me that the river certainly extends to a point below the waters here involved. And indeed, although these waters are designated on the maps of the government surveys as "St. Louis Bay," yet, in view of the language used in the enabling act (section 1) as to the northerly and northwesterly boundary of the state of Wisconsin, and in view of the map therein referred to (Nicollet's map), a copy of which is here in evidence, I would feel obliged to find that the St. Louis river extends to what is commonly known as the "Wisconsin entry," between Minnesota Point and Wisconsin Point, and

that its mouth is there. But, as I have before said, I do not think for the purposes of this case a finding on that question is necessary, because the result, as I view it, must be the same whether these waters are river waters or waters of an arm of Lake Superior. Whatever the character of these waters, the boundary line between Wisconsin and Minnesota as defined by this enabling act would, in my opinion, under the decisions read and commented upon by Mr. Harris, follow the main navigable channel between Big Island and the Minnesota shore; that is, between the shore line of the plaintiff on the one side and the shore line of the defendants Whiteside and Alexander on the other.

The first question arising here is the question of the jurisdiction of this court to entertain this suit as between the plaintiff and the defendant Whiteside (as I understand it, it has been stipulated by counsel for Alexander that the decision as to Whiteside shall be binding as to Alexander), and that question depends upon whether or not the locus in quo here involved—that is, the land under water and the island formed thereon, opposite Norton's shore line, lying between the improved or government channel and what was formerly the natural channel—is now in the state of Wisconsin or in the state of Minnesota. I have no doubt that prior to the making of this improved or government channel this land was in Wisconsin, and the question is, Has it by the construction of this improved or government channel, under the paramount authority of the general government to control these waters and to improve the same (of which there can be no doubt) been transferred from the state of Wisconsin to the state of Minnesota?

[1] I think there can be no doubt, under the decisions, that if the original or natural channel had been shifted or changed by natural causes so that this land would now lie on the Minnesota side of said natural channel, such change or shifting of the channel would have transferred it to the state of Minnesota, and it seems to me that the principles underlying those decisions and their reasoning, so far as it is logical and correct, would cause the same result to follow from the government improvement. It should always be remembered that this channel made by the government is an improvement of the natural channel, under the paramount authority of the government to protect, preserve, and improve the navigation of all these waters. A glance at the maps will show that while portions of the natural channel remain, and that such portions are still navigable by boats of heavy draught, still this channel no longer exists as a continuous channel, and such portions are mere offshoots, or spurs, or pockets, diverging from the improved channel; as, for instance, the portion of the former natural channel now lying behind the island at the locus in quo and between it and the Minnesota shore. In other words, the improved or government channel has been made in lieu of or as a substitute for the natural channel, and for the purpose of improving the navigation of that channel. The old or natural channel has been in effect straightened and rendered more suitable for the purposes of navigation by craft of all descriptions and sizes, and thus the improvement comes fairly and justly within the power of the government. I can see no valid or just reason why the same result as to the boundary between the states

should not follow from the making of this improved channel as would have followed if the change had been brought about by natural causes. So that I think this question of jurisdiction must be answered in the affirmative.

That being determined, the next question is, To whom does the right to use, occupy, and improve the locus in quo belong—to the plaintiff Norton, or to the defendant Whiteside? The answer to this question must, in my opinion, be the same as to this·island which has been formed as it would have been if the land had remained under water, as it was at the time of the government survey.

[2] The right or title to use and occupy the island arises from the right or title to use and occupy the submerged land on which it is formed, and the character and extent of that right or title always remains the same. As to this right, I think the decisions in Minnesota and Wisconsin are in practical effect the same.

[3] While this right, either as to the submerged land or an island formed thereon, is 'a property right, a valuable right, and a right which can be severed from the shore land by the owner thereof and deeded away to others, yet it is a right arising out of and existing by virtue of the riparian proprietorship, and its nature always continues the same, whether severed from the riparian proprietorship or not. In the brief of Mr. Washburn a case is cited, Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. Ed. 126, in which Mr. Justice Harlan, speaking of the rule in Michigan, uses the following language:

"But it is equally well settled in that state that the rights of the riparian owner are subject to the public easement or servitude of navigation [citing cases]. So that whether the title to the submerged lands of navigable waters is in the state or in the riparian owners, it was acquired subject to the rights which the public have in the navigation of such waters. The primary use of the waters and the lands under them is for purposes of navigation, and the erection of piers in them to improve navigation for the public is entirely consistent with such use, and infringes no right of the riparian owner. Whatever the nature of the interest of a riparian owner in the submerged lands in front of his upland bordering on a public navigable river, his title is not as full and complete as his title to the fast land, which has no direct connection with the navigation of such water. It is a qualified title, a bare technical title, not at his absolute disposal, as is his upland, but to be held, at all times subordinate to such use of the submerged lands and of the waters flowing over them as may be consistent with or demanded by the public right of navigation."

This is clear language, and, while it is now settled that grants of public lands bounded by streams or other waters must be construed as to their effect according to the decisions of the state in which the lands lie, it throws, to my mind, light upon all the state decisions. The confusion in these decisions, where any confusion or doubt may seem to exist, arises, I think, from what Judge Jaques has aptly called the terminology of the decisions. I do not know but that I may thus have caused some confusion or doubt in the decision in Hobart v. Hall (C. C.) 174 Fed. 433. Judge Jaques, as I understood him, claimed in his argument that the decisions in Minnesota and Wisconsin were in practical accord on the questions here involved, and I think in this he

was correct. I think the result of those decisions may fairly be summarized as follows:

[4] That a grantee from the government of lands bounded by a stream navigable in fact takes the absolute title in fee to the water's edge; that the state has title to the soil or land under the water between the edge of the stream and the middle thread of the main navigable channel thereof in its sovereign capacity, in trust for the purpose of protecting, preserving, and improving the public right of navigation; that such right, title, or ownership, whatever we may call it, of the state is paramount, but not proprietary, or one under which it can alienate or convey any portion of said soil or land under water to a stranger, but, while paramount, is a limited title or ownership, limited to that purpose, and extending no further; that the riparian owner has also a right or title to such soil or land under water opposite his shore land, between the edge of the stream and the middle thread of the main navigable channel thereof, which, though subject and subordinate to this title of the state, is proprietary, and exclusive as to all others than the state or the general government, and even as to the state or general government exclusive, except as they may act by their properly constituted authorities in protecting, preserving, or improving the public right, and which he can convey to another either in whole or in part; that the limit to this private right, so long as it exists, is imposed by the public right and by that only, and the private right, so long as it exists, exists to the extent beyond which it would be inconsistent with the public right and with that only; that under this right, title, or ownership, whatever we may call it, the riparian owner or his grantee has the exclusive right to reclaim, occupy, and use for any purpose not inconsistent with the public right such soil or land under water or any part thereof out to the main navigable channel, subject only to such paramount right of the state or of the general government; and that the same right or title would exist as to any island between the shore line of the riparian proprietor and the main navigable channel of the stream, whether such island exists at the time of the survey and is omitted therefrom in good faith and without palpable mistake as a negligible fraction, or is afterwards formed by the gradual action of the waters. But, as said by Mr. Justice Harlan, this is a qualified right or title, if we may call it a title. It is not an indefeasible right or title.

It is one which, while it may be granted to another, and which, while it exists, is exclusive and will support an action of ejectment, may yet be terminated and defeated even against the will of the riparian proprietor or his grantee. It may be defeated by a change in the channel of the river either from natural causes or by the action of the state in the exercise of its paramount authority. And over and above, and paramount to, this right or title of the state and this right or title of the riparian proprietor is the right of the general government on interstate waters, such as those here in question, to protect, preserve, and improve the navigation of those waters.

[5] I think there can be no doubt that prior to the construction of this improved channel by the government Whiteside had this right on the south side and up to the natural navigable channel, which would

include the locus in quo, and that Norton's right extended only to this natural navigable channel on the north side. But I think that under the principles of the decisions and the reasoning thereof, if this natural navigable channel had been changed or shifted by natural causes so as to throw the locus in quo to the north side of said channel, that Whiteside's right would have ceased or been defeated, and that then this right would have belonged to Norton by virtue of his riparian proprietorship on the north or Minnesota side. In other words, that by the shifting of the channel the right or title, call it what you may, would have shifted; and this whether the locus in quo still remained land under water or had become in whole or in part an island. I think, too, that under the principles and reasoning of the adjudicated cases the same result would follow from the change in the channel by the government improvement thereof, made, as it was, under the paramount authority of the government. The holder of this right, arising from and existing by virtue of riparian proprietorship, holds it always with knowledge and notice of this paramount authority in the government; and whatever he may do, or whatever improvement he may make, will be done in the face of this knowledge and notice, and, having this knowledge and notice, he has no just right to complain.

A different question might arise, and the principle of estoppel might be invoked against the state or general government, if prior to the making of an improvement by the shore owner or his grantee, in the exercise of this right of use and occupancy, a harbor or dock line had been established by proper governmental authority. But that question does not arise here.

It seems to me that the foregoing conclusions solve equitably and without substantial injustice to any one the questions here involved, and will solve all similar questions which may arise on these waters, and will prevent innumerable complications which might otherwise exist. I think they are fully and fairly supported by the principles laid down in the decisions and the reasoning thereof, and if in doubt I would so hold in the absence of direct and controlling judicial authority. It seems to me, therefore, that the relief asked for in the bill by the complainant as against the defendants Whiteside and Alexander should be granted.

[6] As to the defendant Tallas, it appearing by the evidence that he is in the actual possession of the locus in quo or a part of it, it seems to me that, under the decisions cited and read by Mr. Richards, the court is without jurisdiction to determine those rights in this suit, but that they must be determined in an action at law. As to him, therefore, it seems to me that the bill will have to be dismissed.

Counsel for complainant will prepare a decree in accordance with the foregoing views, and the terms of that decree can be hereafter settled by the court, upon notice to all the counsel.